***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence of record and amend the Opinion and Award. Accordingly, the Full Commission modified the Opinion and Award of Deputy Commissioner Deluca.
 *********** RULING ON EVIDENTIARY MATTER *Page 2 
Plaintiff filed a Motion to Supplement the Record to add the Employment Security Commission Work Search Record he completed showing his job search efforts from July 1, 2007 through September 11, 2007. Defendants did not file a Response or object to the Motion.
IT IS HEREBY ORDERED that plaintiff's Motion is GRANTED and plaintiff's Exhibit 18 is hereby admitted into the evidence of record.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. At all times relevant to this claim, an employer-employee relationship existed between Christopher Massey and Franklin County Schools.
3. The employer is self-insured and Key Risk Management Services is the third-party administrator.
4. Plaintiff was hired by Franklin County Schools as a middle school teacher as of August 18, 2006.
5. The Pretrial Agreement was marked as Stipulated Exhibit 1. The remaining exhibits that were accepted into evidence include plaintiff's Exhibits 1-17; and defendant's Exhibits 1-3; 6; 10-13.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on March 6, 1958. He obtained a bachelor's degree in criminal justice. As of the date of hearing before the Deputy Commissioner, plaintiff stood approximately five feet eight inches tall and weighed approximately 190 pounds.
2. In 2005, plaintiff had some serious health problems, which were ultimately diagnosed as cardiac problems. In the fall of 2005 he had multiple cardiac bypass surgery. At the time of these medical problems and his surgery, plaintiff was a Correctional Officer with the rank of Sergeant with the Alabama Department of Corrections. Because of continuing physical problems following his heart surgery, plaintiff was found to be permanently disabled from resuming his duties as a Correctional Officer. He returned to North Carolina, where he had grown up and where his family resided.
3. Plaintiff had experienced some on-going problems from his heart surgery. These included problems with his collarbone as well as on-going pain in his upper body and numbness in his arms and hands. As a result, once he returned to North Carolina he had established himself as a patient at the Rex Pain Management Center (a.k.a. Carolina Pain Consultants), being treated primarily by Dr. Buchheit.
4. Plaintiff was hired by Franklin County Schools as a "lateral entry" or provisional teacher as of August 18, 2006. He was assigned to teach at Cedar Creek Middle School.
5. On September 18, 2006, at around noon, plaintiff allowed his class to go to the bathrooms on the eighth grade hall. A short time later he realized there was a crowd gathered around the door to the boys' bathroom. He went in and found two students fighting. He ordered *Page 4 
them to stop and when they did not he attempted to intervene and separate them. Both of the boys were about as large as plaintiff. As he tried to break up the fight by pushing the boys against the wall of the bathroom, one of the boys pushed plaintiff to the floor. Plaintiff was not able to break his fall and landed hard on his buttocks.
6. After the fight ended, plaintiff took both students to the office and informed the school secretary about the fight. On his way back to his room, he also reported the incident to a vice principal.
7. While plaintiff did not immediately feel pain, he woke the following day with pain. The pain was in the middle of his back and down his left side below his rib cage.
8. Because of the on-going problems and pain that he had experienced from the heart surgery, plaintiff first thought that this new pain that he was experiencing after breaking up the student fight could be related to his heart problem. Because he had not established himself with a cardiologist, the earliest appointment that plaintiff could get was on October 2, 2006. Plaintiff continued to work following the incident of September 18, 2006, but was experiencing pain. At the appointment with the cardiologist, plaintiff reported left flank pain off and on for the past two weeks. The doctor evaluated him and concluded that the pain was not related to his heart problems.
9. On October 2, 2006, plaintiff was also seen at Rex Pain Management Center by Kim Graham, a nurse practitioner. Plaintiff had been treating at Rex Pain Management Center for problems arising from his cardiac surgery, including numbness in his upper extremities. Plaintiff reported his chest wall pain, arm numbness, and leg numbness were improved since his previous visit on August 9, 2006. There is also no indication in this medical record that plaintiff complained of low back pain. However, this was a regularly scheduled appointment and plaintiff *Page 5 
was seen by a cardiologist for his left flank pain that same day. As Dr. Buchheit indicated in his deposition, it is not unusual for patients to report matters that pertain solely to the condition for which the doctor is treating them when they appear for a regularly scheduled appointment.
10. On the morning of October 11, 2006, plaintiff experienced sharp pain in his lower back and numbness in his left leg. The pain was such that he was unable to report to work that day. He went to Wake Forest Urgent Care for treatment.
11. The treatment record from the Urgent Care indicates that plaintiff reported not only pain in his left side but also down his left hip. The record indicates that the left hip had been bothering him for about three weeks.
12. On October 16, 2006, plaintiff saw Dr. Al-Sabbagh of Gastroenterology Hepatology. Plaintiff stated that he recently started having left upper quadrant abdominal pain that radiated to the back. Plaintiff described the pain as a constant aching pain that was not sharp. Dr. Al-Sabbagh recommended a colonoscopy, which found no significant problems, and eventually referred plaintiff for a lumbar MRI.
13. On October 25, 2006, Brooke Wheeler, principal of Cedar Creek Middle School, performed a formal evaluation of plaintiff's classroom. The evaluation determined that plaintiff performed below standard or unsatisfactory in five of the eight areas of evaluation.
14. Based upon the poor evaluation, Ms. Wheeler met with plaintiff and placed him on a Professional Action Plan on or about October 26, 2006. Ms. Wheeler testified that plaintiff did not complain of pain during this meeting.
15. A lumbar MRI was performed on October 27, 2006. The MRI revealed a left paramedial posterior disc herniation at L4-5 displacing the left L5 nerve root. Plaintiff returned to Dr. Al-Sabbagh on the evening of October 30, 2006 and was advised of the MRI result. Dr. Al-Sabbagh *Page 6 
notes that plaintiff's left side and abdominal pain are probably related to referred back pain from his back as plaintiff has a disc abnormality.
16. Ms. Wheeler first learned that plaintiff was claiming he was injured while breaking up the September 18, 2006 fight on October 31, 2006. Ms. Wheeler completed the Form 19 stating that plaintiff: "has been complaining of chest and stomach pain. On October 31, he told the assistant principal that his injuries were related to his back. He alleges that the injury is a result of a fight he broke up on 9/18/06. Prior to 10/31/06, we had no knowledge of any injury from 09/18/06." Plaintiff filed a written report of his injury on November 2, 2006.
17. Plaintiff has not returned to work for defendant-employer since November 1, 2006. Plaintiff was recommended for termination shortly thereafter due to his poor performance in the classroom as well as other issues.
18. On November 10, 2006, plaintiff saw Dr. Buchheit at Rex Pain Management Center. Plaintiff reported that he broke up a fight on September 18, 2006 and was knocked to the floor and had upper back and ribcage pain the next day. Plaintiff complained of an increased amount of radicular type leg pain and some back pain. Dr. Buchheit recommended a series of epidural injections to attempt to relieve his symptoms.
19. On November 15, 2006, Key Risk Management Services, the third-party administrator for the defendant-employer, filed a Form 61 Denial of Workers' Compensation Claim, denying plaintiff's claim on the grounds that plaintiff's injury was not the result of an accident or specific traumatic incident and lack of medical documentation to support the alleged injury.
20. On November 21, 2006, plaintiff saw Dr. Robert Allen at Raleigh Neurosurgical Clinic for evaluation of his back and left leg pain. Dr. Allen recommended conservative *Page 7 
treatment. By letter of July 8, 2007, Dr. Allen indicated that it was his opinion that "it is more likely than not that the fall that occurred during the course of [plaintiff] breaking up the fight on September 18, 2006 contributed to development of his back and left sciatic pain." In his deposition, Dr. Allen restated the opinion contained in his letter of July 8, 2007 regarding the cause of plaintiff's current back condition.
21. On or about January 5, 2007, plaintiff entered into an agreement with Franklin County Schools to resign from his employment immediately in lieu of the school system proceeding with a termination action against him. As a result of this settlement, plaintiff was paid his salary and local supplement through January 2, 2007.
22. Dr. Buchheit opined that it was more likely than not that the fall that plaintiff experienced on September 18, 2006, while he was breaking up the fight, was related to plaintiff's present back problems. Dr. Buchheit further explained that it would not be unusual for plaintiff to first believe that the pain he was experiencing was related to his cardiac problems.
23. Dr. Buchheit did not provide any specific work restrictions for plaintiff, but he did testify that plaintiff should avoid heavy lifting.
24. Plaintiff fell after being pushed while breaking up the fight at school on September 18, 2006. Plaintiff's current back condition is causally related to the September 18, 2006 fall.
25. Plaintiff's employment began on August 18, 2006, and the time from that date through January 2, 2007, covers a period of 19 and 5/7 weeks.
26. The records showing plaintiff's earnings, including the additional payment for his salary through January 2, 2007, were admitted as Plaintiff's Exhibit #17. Those records show gross payments to Plaintiff during his months of employment of $14,571.70. *Page 8 
27. Plaintiff has been consistently applying for jobs through the Employment Security Commission's web site on a weekly basis, submitting at least two applications a week. Plaintiff has also completed job search courses given by the Granville County Department of Social Services. Despite these reasonable efforts, plaintiff has not obtained employment.
28. Defendant's defense of this matter was not based on unfounded litigiousness and was reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident on September 18, 2006. N.C. Gen. Stat. § 97-2(6).
2. Being pushed to the ground by a student in the course of breaking up a fight at school constitutes an episode of violence that occurred in the course of plaintiff's duties as a teacher. N.C. Gen. Stat. § 115C-338(b).
3. The injury that plaintiff suffered when he was pushed to the ground on September 18, 2006, caused or significantly contributed to the ruptured disk in his lower back, which results in the pain that he experiences in his back and down into his left leg. Holley v. ACTSCorp., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003).
4. Plaintiff has established disability on and after January 3, 2007, through the production of evidence that, although he may be capable of some work, he has been unsuccessful in obtaining employment through reasonable efforts to find work. Russell v. Lowes Product Distribution,108 N.C. 762, 425 S.E.2d 454 (1993). *Page 9 
5. Based upon the record of plaintiff's earnings, the Full Commission finds that plaintiff earned $14,571.70 from August 18, 2006, through January 2, 2007, a period of 19 and 5/7 weeks. Dividing the gross wages paid to plaintiff through January 2, 2007, $14,571.70, by the 19 and 5/7 weeks covered by these earnings, gives an average weekly wage of $739.14. Multiplying the average weekly wage of $739.14 by 43 weeks (the weeks of pay for a Franklin County School teacher per year), gives a projected income of $31,783.02. Dividing the projected yearly income of $31,783.02 by 52 weeks would yield an average weekly wage of $611.21, and a weekly compensation rate of $407.47. See Conyers v. New HanoverCounty Schools, 654 S.E.2d 745 (2008).
6. Plaintiff is entitled to full salary continuation for one year from January 5, 2007, through January 4, 2008. N.C. Gen. Stat. § 115C-338.
7. Plaintiff is entitled to the payment of temporary total disability benefits at the weekly rate of $407.47 from January 5, 2008, and continuing until plaintiff returns to work or until further order of the Industrial Commission. N.C. Gen. Stat § 97-29.
8. Defendant shall pay for all medical treatment incurred or to be incurred as a result of plaintiff's compensable injury by accident so long as it tends to affect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1. This shall include the cost of the treatment at the Urgent Care in October and November 2006, the cost of the evaluation by the cardiologist, Dr. Parikh, the cost of the treatment provided and recommended by the gastroenterologist, Dr. Al-Sabbagh, the evaluation by Dr. Allen, and the treatment for plaintiff's back and left leg problems provided by Rex Pain Management (Carolina Pain Consultants) which began in November 2006 and continued through the date of the hearing before the Deputy Commissioner. Id. *Page 10 
9. Defendant has not defended this matter unreasonably. Thus, no award of attorney fees will be made to pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff full salary continuation for one year from January 5, 2007, through January 4, 2008, subject to the attorney's fee provided herein. This compensation has accrued and shall be paid to plaintiff in a lump sum.
2. Defendant shall pay to plaintiff temporary total disability benefits at the weekly rate of $407.47 from January 5, 2008, and continuing until further order of the Industrial Commission, subject to the attorney's fee provided herein. The portion of this compensation that has accrued shall be paid to plaintiff in a lump sum.
3. Defendant shall pay for all reasonable and necessary medical treatment that may effect a cure or a reduction in the symptoms suffered by plaintiff, arising from the injury that he suffered on September 18, 2006. Such treatment shall include treatment for the ruptured disk found at L4-L5 in the lumbar area of his spine. It shall also include all of the treatment and diagnostic studies on plaintiff prior to the MRI done on October 27, 2006, which found the ruptured disk.
4. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded herein. Fees based on compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, plaintiff's counsel shall receive every fourth check of disability compensation that is owed to plaintiff. *Page 11 
5. Defendant shall bear the costs, including an expert witness fee of $475.00 to Dr. Buchheit and $600.00 to Dr. Allen, if not paid by prior order.
This 23rd day of February 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1